Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5695 | **DATE** | 6/1/2001 |
| **CASE TITLE** | Tyrone Walls vs. Tempstaff Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion for summary judgment [13-1] is granted in part and denied in part. Judgment is entered for defendant Symons Corporation and against plaintiff Tyrone Walls on Count I. Counts II and III are dismissed without prejudice. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 05 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 6/1/2001 | |
| SB courtroom deputy's initials | FILED FOR DOCKETING 01 JUN -4 PM 5:54 | date mailed notice mdf | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TYRONE WALLS, )
)
Plaintiff, ) No. 5695
)
v. ) Suzanne B. Conlon, Judge
)
TEMPSTAFF INC. d/b/a ACCOUNT )
RESOURCE, SYMONS CORORATION, )
and MICHAEL CARLSON, )

Defendant.

**MEMORANDUM OPINION AND ORDER**

Tyrone Walls ("Walls") sues Symons Corporation ("Symons") and Michael Carlson ("Carlson") (collectively "defendants")[1] for actions relating to Walls' termination from Symons. Walls sues Symons for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") (Count I). Walls sues Symons and Carlson for defamation *per se* (Count II) and tortious interference with his prospective economic advantage (Count III). Defendants move for summary judgment, pursuant to Fed.R.Civ.P. 56.

**BACKGROUND**

**I. The parties**

All facts are undisputed unless otherwise noted. Symons is a corporation doing business in Illinois. Carlson was a general accounting manager at Symons' Des Plaines, Illinois facility at all times relevant to this action. Account Resource, a temporary staffing service, arranged for Walls to perform temporary services for Symons.

---

[1] Defendant Temstaff Inc. d/b/a Account Resource was dismissed voluntarily.

## II. Walls' employment

On February 8, 2000, Walls applied for employment with Account Resource. On February 21, 2000, Account Resource temporarily placed Walls at Symons for the purpose of updating filing in the payroll department. Once Walls began working at Symons, he carried out additional duties, including maintaining the employees' vacation calendar, assisting in running the clerical payroll, and filing in the accounts payable department.

On April 5, 2000, Walls asked the Controller, Mark Reis ("Reis"), whether he could be a permanent employee. Reis responded that he would look for available positions. Later in April, Reis asked Walls if he would be interested in a permanent position as a mail room clerk. Walls said he would be willing to accept the position. On May 19, 2000, Walls formally applied for the mail room clerk position.

On May 21, 2000, Walls sent billing employee Patti Koziol ("Koziol") an e-mail message. The message read as follows:

Hi Patti:

Just wanted to say hello and tell you that I'm thinking of you. I know we aren't supposed to send personal messages on Symons email, but too bad, you are worth the risk and if anyone sees it, I'll take full responsibility.

You probably think I'm a buffoon, the way I always say silly things around there. But one thing I'm totally sincere about is that I think the world of you. I would have asked you out a long time ago, except I don't think you want me to. But in any case, you know that you always have a friend in me and if you ever need anything, all you have to do is whistle!

Just me,

Tyrone (your anything-but-secret admirer!)

On May 26, 2000, Walls asked Reis when he would become a permanent employee. Reis told Walls that he would already be a permanent employee but for the fact he had made an inappropriate comment that could be interpreted as sexual harassment. Reis did not inform Walls of the content of the allegedly inappropriate comment. In fact, Reis was unaware of the specific inappropriate comment. Kevin Smith ("Smith"), information technology manager, only told Reis that he overheard a conversation between Koziol and Walls that was "inappropriate and personal in nature."[2] Reis told Walls he did not want to hear of any more incidents and requested that Walls monitor his future conversations with employees. In the same conversation, Reis offered Walls the possibility of becoming a permanent employee in the payroll department. Reis conditioned the employment opportunity on Walls' willingness to learn the payroll system within a month. Walls agreed to this arrangement.

On May 30, 2000, Richard Wolter ("Wolter"), Symons' human resource manager at the time, was informed that Walls sent Koziol the May 21st email. Wolter met with Reis that day and showed Reis the email. At this point, Reis informed Wolter about the inappropriate and personal conversation between Koziol and Walls that Smith had overheard. Wolter recommended to Reis that Walls be dismissed. Reis agreed.

Later that day, Reis and Carlson informed Walls that his services at Symons were no longer needed. Reis told Walls that they had talked about sexual harassment in the past, but it had gotten worse. Reis further stated that they had an email from Walls that proved sexual harassment. Walls was 54 years old at the time he was dismissed.

---

[2] Smith overheard Walls saying to two female employees, including Koziol, that he had six wives at Symons.

After the meeting with Walls, Carlson contacted Account Resource and informed the staff supervisor, Ardis Dumalski ("Dumalski"), that Walls had been dismissed. Dumalski asked why Symons made this decision. Carlson explained Walls had violated the company's sexual harassment policy and had sent a suggestive e-mail to an employee. Dumalski called Walls later that day and informed him that his employment with Account Resource was terminated.

Wolter also met with Koziol on May 30th after terminating Walls. Wolter apologized for Walls' conduct and informed Koziol that Walls would no longer be working at Symons. During the meeting, Koziol gave Wolter a copy of a poem entitled "The Classic Lady" that Walls had given her that morning.[3]

---

[3]The text of "The Classic Lady" reads as follows:

She walks in every morning, beyond beautiful,
poetry in motion, everything perfect,
every hair in place.

With eyes sparkling, she smiles at you,
the timelessness of a thousand rivers
the purple majesty of a mountain winter
who is the classy lady?

Lady secret, mystery of mysteries
woman among women, yet more than human
can she be approached by modern man?

When I think about it, who am I
to make the Queen of the Angels sigh?
For she is the sunlight, not to be touched
not to be known, not to be won
but there to be valued like no other
defiant of explanation.
Such is the rainbow
such is the total package
such is the classy lady.

### III. Post-termination actions

Walls sent three e-mail messages to Symons employees after he left. On May 31, 2000, he sent an e-mail to Reis protesting his discharge. In early June 2000, he sent an e-mail to Dan Evans, a male friend, and Sue Kolar ("Kolar"), the supervisor of the billing department. The message to Kolar read as follows:

> Hi Sue,
>
> For whatever its worth, I just wanted you to know that although we never talked, and I know you probably didn't have much of an opinion of me, I always respected you as someone who efficiently does her job, week in and week out. Furthermore, I respected the fact that unlike your two little friends, you never pretended to be my friend, and I have great respect for that kind of honesty. Symons needs more people like you and I wish you well.
>
> Tyrone Walls

Walls' e-mail address was "nomercy11@juno.com." Kolar immediately brought a copy of the e-mail to Wolter and expressed her concern. Based upon Wolter's knowledge of Walls' prior conduct, his e-mail and poem to Koziol, his post-termination e-mails to Symons' employees, and the concern expressed by Kolar, Wolter feared Walls' actions would escalate. Thus, Wolter contacted the Des Plaines Police Department. On June 9, 2001, a police detective contacted Walls and advised him to cease and desist from sending further e-mails to Symons.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir.

2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome often depends on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II. The ADEA

The ADEA provides that it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges age discrimination, an employer is liable only if age actually motivated the employer's decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2105 (2000) (citations omitted).

A plaintiff may prove intentional age discrimination through either direct or indirect evidence. *Robin v. ESPO Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000); *Michas*, 209 F.3d at 692.

Walls relies on circumstantial evidence to establish Symons' discriminatory intent. When a plaintiff attempts to establish discrimination with indirect evidence, courts have established a framework for allocating the burden of production between the parties and an order for the parties' presentation of proof. *Id.* at 692. The plaintiff must first make out a *prima facie* case of discrimination. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once a *prima facie* case has been established, the defendant must offer a legitimate non-discriminatory reason for the employment decision. *Id.* If the defendant offers a non-discriminatory reason, the burden then shifts back to the plaintiff to prove the defendant's reason is merely a pretext for discrimination. *Id.* at 693.

## A. Walls' *Prima Facie* Case For Age Discrimination

To make out a *prima facie* case of discrimination, plaintiffs typically must present evidence to show (1) they are a member of a protected class;[4] (2) they met their employer's job expectations to a reasonable extent; (3) they were the victims of an adverse employment action; and (4) their position remained open or was filled by someone who is not a member of the protected class. *Id.* Walls alleges discrimination based on the fact that he was terminated from his temporary position in the payroll department and he was not hired for a permanent position in the mail room.

Symons does not dispute that Walls offers sufficient evidence to satisfy the first three prongs of a *prima facie* case. However, Symons contends the fourth prong cannot be satisfied because the corporation automatically hired temporary employees sent by Account Resource.

---

[4]Individuals who are at least 40 years old are protected by the ADEA. 29 U.S.C. § 631(a).

7

Defendants' 56.1 Statement of Facts ("Def. Facts") at ¶¶ 43-45. This contention does not preclude Walls' ability to satisfy the fourth prong because he offers sufficient evidence to show that Symons does not automatically hire Account Resource referrals. Specifically, he offers evidence suggesting Symons screens temporary employees through interviews and resume reviews. Walls 56.1 Statement of Facts ("Walls Facts") at ¶ 32.

Walls offers sufficient evidence to satisfy the fourth prong in regard to his termination from the payroll department. Walls' temporary position in payroll initially was taken over by LaShana Buckner and later by Sherry Davis. *Id.* at ¶¶129-30. Buckner and Davis were approximately 30 years younger than Walls and not members of the protected class. *Id.*

Additionally, Walls offers sufficient evidence to satisfy the fourth prong in regard to Symons' decision not to hire him as a permanent mail room employee. The available position in the mail room was temporarily filled by Latanya Williams and then LaSonia Strong. *Id.* at ¶¶ 94-96. Strong was eventually hired on a permanent basis. *Id.* Neither Williams nor Strong were members of the protected class. Because Walls has satisfied the requirements for a *prima facie* case of age discrimination, the burden shifts to Symons.

**B. Symons' Burden of Production**

Symons satisfies its burden of production by advancing a legitimate non-discriminatory reason for terminating Walls. Specifically, Symons asserts Walls was terminated from employment in payroll and not hired for the mail room position because (1) he engaged in a conversation that was inappropriate and personal in nature, and (2) Wolter and Reis believed Walls engaged in sexually harassing conduct.

8

## C. Pretext

After a defendant offers a legitimate non-discriminatory reason for termination, the plaintiff must be given the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 120 S.Ct at 2106 (citations omitted). The pretext inquiry focuses on the honesty rather than the accuracy of the employer's stated reasons for discharge. *Helland v. South Bend Community Sch. Corp.*, 93 F.3d 327, 330 (7th Cir. 1996). A plaintiff can prove the employer's proffered reasons were dishonest by showing the reasons: (1) have no factual base, (2) are not the actual motivation for discharge, or (3) are insufficient to motivate discharge. *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997) (internal citations omitted). "The mere fact that the employer acted incorrectly or undesirably, however, cannot adequately demonstrate pretext." *Id.* For summary judgment purposes, Walls must "produce evidence from which a rational fact finder could infer that the company lied." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994).

Walls disputes the credibility of Symons' allegations regarding Smith's statement that Walls behaved inappropriately. Walls points to the fact that Smith only claims to have heard one inappropriate comment by Walls, namely that he had six wives at Symons. Walls Facts at ¶¶ 88-89. Walls offers further evidence to show that all the other comments Smith overheard Walls make to female employees were innocent, such as "you got your hair done" or "it looks nice." *Id.* Walls' evidence suggests no female employees expressed concern about these comments or

9

complained to Smith about them. *Id.* at ¶¶ 89, 92. Finally, Walls offers evidence to show the female employees designated as Walls' fictional wives participated in the joke and found it amusing rather than offensive. *Id.* at ¶¶ 112-113.

To the extent this evidence relates to Walls' innocence of actual sexual harassment, it is irrelevant. *Waggoner v. City of Garland, Texas,* 987 F.2d 1160, 1166 (5th Cir.1993). The relevant question is whether Symons' decision-makers believed Walls was guilty of harassment and, if so, whether this belief was the reason for his discharge. *See Elrod v. Sears Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991); *Waggoner,* 987 F.2d at 1165-66 (when employer dismisses employee for sexual harassment based on complaints of other employees, pretext can only be shown with evidence employer did not reasonably believe employee's allegations).

Walls contends Wolter had no basis for honestly believing Walls engaged in sexual harassment. However, Walls' evidence shows Wolter had a basis for his belief. First, Wolter knew that Smith overheard an unspecified inappropriate comment by Walls. Second, Wolter read the May 21st email that Walls had written to Koziol. *Id.* at ¶ 121; Walls Resp. to Def. Facts at ¶¶ 18, 20, 25, 26, 32. Therefore, Walls is actually arguing that Wolter did not have a sufficient basis for concluding Walls engaged in sexual harassment. However, "the fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Essex v. U.S. Parcel Service, Inc.,* 111 F.3d 1304, 1310 (7th Cir. 1997).

Walls further asserts pretext is shown by the triviality of Symons' proffered reason for its adverse employment action, namely sexual harassment. Walls cites two cases to support his position: *Anderson v. Aurora Township,* No. 97 C 2477, 1997 WL 802099 (N.D. Ill. December

10

29, 1997) and *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285 (7th Cir. 1999). In *Anderson*, the trivial behavior for plaintiff's termination involved one violation of the employer's no-talking policy. 1997 WL 802099, at *11. In *Stalter*, the trivial behavior was eating a handful of Doritos left on a countertop. 195 F.3d at 290. In contrast, a proffered reason of sexual harassment is hardly trivial. Furthermore, the courts in *Stalter* and *Anderson* did not base their findings of pretext merely on the triviality of the alleged offenses, but rather on the fact that employees outside the protected class had committed the same infractions and were not penalized as harshly. *Id.* at 290-91; *Anderson*, 1997 WL 802099, at *11. To the extent that Walls argues that his behavior did not amount to sexual harassment, "it is not this court's role to assess whether an employer's responses were commensurate with the seriousness of the employee's infractions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986).

Similarly, employers are allowed to make individualized decisions about the actions taken in response to a rule violation, but they cannot enforce their rules in a discriminatory way. *See Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989) (an employer "can be as arbitrary as he wants–he just cannot treat an older employee more harshly than a younger one"). Therefore, Walls' evidence that Symons did not conduct a sexual harassment investigation like the one detailed in its policy book, without more, is irrelevant for purposes of establishing pretext. Symons' decision to rely on the accuracy of the information it received is not sufficient evidence of discrimination. It merely reflects a legitimate business judgment. This court may not "sit as a super personnel department to review an employer's business decision." *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000). *See also Kariotis v. Navistar Intern. Transp.*

*Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (rejecting shoddy investigation as evidence of discriminatory intent).

Walls offers evidence to establish that Symons conducted a thorough investigation when an employee outside the protected class was accused of sexual harassment. Specifically, Wolter testified that while he worked at Symons he only remembered one other time when he had occasion to investigate allegations of sexual harassment. Walls Facts at ¶ 147. Mike Hartford, an employee in his 20s, was accused of sitting under the stairs and watching female employees go up the stairs, making them feel uncomfortable. *Id.* Wolter explained that he told Hartford to stop this behavior and Hartford complied. *Id.* No further action was taken and Hartford was not formally disciplined. Although a trier of fact might conclude Hartford was treated more favorably than Walls, there is no evidence to establish that Walls and Hartford were similarly situated in all relevant respects other than age. Walls offers no evidence regarding Hartford's job qualifications or how they compared to Walls' qualifications. In addition, the incident involving Hartford occurred over 10 years earlier. Walls offers no evidence to establish Symons' employment needs and views on sexual harassment remained consistent during this time period. Read in a light most favorable to Walls, a trier of fact could not reasonably find that this evidence supports a finding of pretext.

Walls does not offer evidence that he heard age-related comments during his employment at Symons. However, he offers evidence to establish a pattern of age discrimination. "Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Snelson v. Guernsey*

*Dell, Inc.*, No. 95 C 3715, 1996 WL 207189, at *3 (N.D. Ill. April 24, 1996) (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2nd Cir. 1990)).

First, Walls offers evidence that Reis dismissed Ken Jarvis, a temporary worker in his 40s, from Symons' accounts payable department and replaced Jarvis with Angel Smith, who was in her 20s. Walls Facts at ¶¶ 34, 36-37. Carlson testified that Jarvis' work performance was acceptable, but he was released because Angel Smith was hired to fill his position permanently. *Id.* at ¶ 35. Angel Smith became a permanent employee within a few months, even though she had conflicts with a co-worker. *Id.* at ¶¶ 35-36, 42-43. Conflicts with a supervisor and an unwillingness to accept additional work duties were Reis' stated reasons for terminating Jarvis. *Id.* at ¶ 34. This evidence is insufficient to establish age discrimination. Walls has not presented evidence showing that Angel Smith's job qualifications compared to Jarvis'. At most, he has pointed to a personality trait that Angel Smith and Jarvis shared. *See Ritter*, 231 F.3d at 1044 (plaintiffs cannot establish age discrimination when they fail to present evidence regarding the qualifications of the terminated employees). Moreover, Symons offers evidence to establish that Angel Smith had accounts payable experience and analysis skills. Def. Facts, Ex. A at pp. 58-59 and Ex. E. at pp. 103-104.

Next, Walls offers evidence Reis only knew of two temporary employees who Symons subsequently hired as permanent employees. These employees were Angel Smith and Melissa Kelly. Like Angel Smith, Kelly was not a member of the protected class. *Id.* at ¶¶ 38-39. In addition, Reis and Wolter discussed hiring Walls as a permanent employee once he had worked at Symons long enough for the corporation to be exempt from paying a conversion fee to Account Resource. *Id.* at ¶ 84. However, Symons did not postpone the hiring of Angel Smith or Kelly

13

and paid conversion fees for both of them. *Id.* at ¶¶ 57-58. This evidence is insufficient to support a reasonable inference of age discrimination. Walls fails to demonstrate that Angel Smith and Kelly were similarly situated to himself or other employees in the protected class.

Walls also offers evidence to show Reis fired Patricia DiNunzio, a member of the protected class, for being a disruptive influence in the department and replaced her with Alicia Whorton, a woman in her 20s. *Id.* at ¶¶ 46, 51, 53-54.[5] Walls proffers evidence that Barbara Wells ("Wells"), a member of the protected class, had numerous conversations with Reis about her workload and not feeling equipped to handle the processing of state tax returns. *Id.* at ¶¶ 61, 62, 64, 68. Wells asked both Reis and Wolter whether her job could be restructured to relieve her of the tax return processing duty, but they refused her request. *Id.* at ¶¶ 62-63. After Wells resigned, the processing function was given to Jeff Desiron, who was in his 20s. *Id.* at ¶¶ 66-67.[6] Finally, Walls offers evidence that Angela Scarbrough, a member of the protected age group, worked as a legal secretary at Symons. *Id.* at ¶ 69. Her position was eliminated in July 2000. *Id.* Walls' evidence pertaining to DiNunzio, Wells, and Scarbrough suffers from the same deficiency as the other evidence he offers to establish a pattern of age discrimination. The evidence does not demonstrate that the relevant parties within and outside the protected class were similarly situated in terms of job qualifications. Drawing all reasonable inferences in Walls' favor, a pattern of age discrimination cannot be inferred from the evidence. Accordingly, Symons' motion for summary

---

[5]After they were terminated from their positions at Symons, Walls claims DiNunzio told him that Reis made age-based comments to her. Walls Facts at ¶ 50. "Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corporation*, 113 F.3d 738, 742 (7th Cir. 1997).

[6]Walls' evidence regarding Desiron's raise and promotion is inadmissible hearsay. Similarly, Walls' evidence that Angie Scarbrough's transfer request was denied is hearsay.

judgment on Count I must be granted. Walls' state law claims are dismissed without prejudice. *See Larsen v. City of Beloit,* 130 F.3d 1278, 1286 (7th Cir. 1997) (the decision to exercise supplemental jurisdiction over state law claims once summary judgment has been granted on federal claims is discretionary).

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. The motion is granted on Count I. Counts II and III are dismissed without prejudice.

ENTER:

*[signature: Suzanne B. Conlon]*

Suzanne B. Conlon

June 1, 2001

United States District Judge